## NATIONAL LABOR RELATIONS BOARD, Petitioner,

v.

## The MOTOR CONVOY, INC., Respondent.

### No. 81–1552.

United States Court of Appeals, Fourth Circuit.

Argued Jan. 7, 1982.

Decided March 24, 1982.

William M. Bernstein, N. L. R. B., Washington, D. C. (William A. Lubbers, Gen. Counsel, John E. Higgins, Jr., Deputy Gen. Counsel, Robert E. Allen, Acting Associate Gen. Counsel, Elliott Moore, Deputy Associate Gen. Counsel, Washington, D. C., on brief), for petitioner.

Alexander E. Wilson, III, Atlanta, Ga. (Forrest W. Hunter, Jones, Bird & Howell, Atlanta, Ga., on brief), for respondent.

Before MURNAGHAN and ERVIN, Circuit Judges, and WILKINS,* District Judge.

WILKINS, District Judge:

This case is before the Court on the application of the National Labor Relations Board seeking judicial enforcement of an order issued against Respondent. Petitioner held that Respondent violated Sections 8(a)(3) and (1) of the National Labor Relations Act by discharging employee Ronald Walker because he engaged in protected union activities. Petitioner's order requires Respondent to reinstate Walker with back pay and post an appropriate notice that it will not engage in similar acts in the future. This determination followed a decision by an Eastern Conference Area Arbitration Panel that Walker was fired for "just cause."

Enforcement of this order is denied. The National Labor Relations Board improperly failed to defer to the decision of the arbitration panel.[1]

### FACTS

Respondent is an interstate freight carrier engaged specifically in the transport of

---

* Honorable William W. Wilkins, Jr., United States District Judge for the District of South Carolina, sitting by designation.

1. Respondent also argued Petitioner's application for enforcement should be denied because there was not substantial evidence in the record to support Petitioner's conclusion that

new automobiles, trucks, tractors and used cars. Its corporate headquarters are located in Atlanta, Georgia but it has terminals throughout the eastern United States. Respondent's drivers, shop and yard employees are represented by various local unions of the International Brotherhood of Teamsters and are covered by nationally negotiated collective bargaining agreements. Walker was hired as a driver at Respondent's Winston-Salem terminal on June 21, 1976. He was discharged on September 8, 1978, following an accident in a company truck.

Following his discharge, Walker filed a grievance under his collective bargaining agreement alleging that he had been unjustly discharged. The collective bargaining agreement permitted an employee to be discharged for "just cause" or "proven negligence."[2] It also contained a provision barring discrimination against "any employee because of union membership or activities." As provided in the collective bargaining agreement, a hearing was held before the Eastern Conference Area Arbitration Panel on September 19, 1978. After a full and complete hearing, the panel concluded that Walker had been dismissed for just cause.

On March 2, 1979, Walker filed a complaint with Petitioner charging Respondent with unfair labor practices in connection with his dismissal. A hearing was held before an administrative law judge in June, 1979. The ALJ found that Respondent had discharged Walker in violation of the National Labor Relations Act because he had filed numerous grievances and complaints with the union against Respondent. The ALJ declined to defer to the decision of the arbitration panel concluding that the evidence failed to establish that Walker's unfair labor practice charges were resolved in the arbitration proceeding. The National Labor Relations Board affirmed this decision and now seeks judicial enforcement of its determination.

## LAW

Judicial enforcement of Petitioner's order should not be granted in this case because Petitioner should have deferred to the decision of the arbitration panel. Although Petitioner has actual authority to adjudicate unfair labor practice charges which have been resolved in prior arbitration proceedings, Petitioner has instead established a policy of deferral in such cases. *See Roadway Express, Inc. v. N. L. R. B.*, 647 F.2d 415, 418–19 (4th Cir. 1981); *Carey v. Westinghouse Corp.*, 375 U.S. 261, 271, 84 S.Ct. 401, 408, 11 L.Ed.2d 320 (1964). Since the establishment of the so-called "*Spielberg Doctrine*" in 1955, Petitioner has consistently stated that it would defer to arbitration awards resolving unfair labor practice charges if: (1) the proceedings have been fair and regular; (2) the parties agreed to be bound; (3) the decision was not clearly repugnant to the purposes and policies of the Act; and (4) the unfair labor practice charges were resolved.[3] *Spielberg Man. Co.*, 112 N.L.R.B. 1080, 1082 (1955); *Suburban Motor Freight, Inc.*, 247 N.L.R.B. .2 (1980); *Raytheon Co.*, 140 N.L.R.B. 883 (1963), *enf't denied on other grounds*, 326 F.2d 471 (1st Cir. 1964).

Walker had been fired for engaging in protected union activities. Since this Court finds that Petitioner should have deferred to the decision of the arbitration panel, it is unnecessary to consider that issue.

2. Under the collective bargaining agreement entered into between Respondent and Walker's union, disputes which arise over the contractual right to dismiss an employee must be submitted to binding arbitration. This dispute was properly submitted to arbitration within the terms of that agreement.

3. The fourth requirement that the unfair labor practice issue be resolved in the arbitration proceeding was actually formulated in *Raytheon Co.* nine years after the *Spielberg* decision. Some courts integrate this fourth requirement into the analysis of whether the third *Spielberg* requirement has been satisfied. These courts hold that, because the unfair labor practice issue was not resolved, the arbitration award is repugnant to the purposes and policies of the Act. *See, e.g., Bloom v. NLRB*, 603 F.2d 1015 (D.C.Cir.1979); *Dreis & Krump Mfg. Co., Inc. v. N. L. R. B.*, 544 F.2d 320 (7th Cir. 1976). Other courts treat this requirement as separate and independent from the first three. *See NLRB v. General Warehouse Corp.*, 643 F.2d 965, 969 n. 12 (3rd Cir. 1981).

Petitioner is, of course, free to depart from this policy. However, departure may not be "sub silentio ... to reach a different, unexplained result in a single case." *N. L. R. B. v. International Union of Operating Eng., Local 925*, 460 F.2d 589, 604 (5th Cir. 1972); *Squaw Transit Co. v. United States*, 574 F.2d 492 (10th Cir. 1978); *N. L. R. B. v. Silver Bay L. U. No. 962*, 498 F.2d 26 (9th Cir. 1974); *Roadway Express, Inc. v. N. L. R. B.*, 647 F.2d at 415. Until Petitioner explicitly adopts a different policy through formal rulemaking or adjudicative procedures, it must defer to private arbitration which complies with the guidelines established in *Spielberg*.

The decision of the arbitration panel in this case clearly complies with those guidelines. It is undisputed that the parties agreed to be bound by the decision. Also, there is no suggestion that the proceedings were in any way irregular, unfair or biased. Nor is there any reason that the decision should be considered repugnant to the policies or purposes of the National Labor Relations Act. Walker was present at the arbitration panel hearing and was represented by the Secretary-Treasurer of Local 391. He was given every opportunity to speak, offer witnesses and evidence, and present arguments in his favor. At the conclusion of the hearing, he stated on the record that he had been represented fairly and had received a fair hearing.

The only *Spielberg* guideline which Petitioner argues is not met in this case is the requirement that the unfair labor practice issue be resolved in the arbitration proceedings. Petitioner asserts that the arbitration panel resolved only the issue of whether Walker was discharged for just cause under the collective bargaining agreement, not whether Respondent committed unfair labor practices in connection with the dismissal. Petitioner cites a number of cases as authority for the proposition that an arbitrator's conclusion that a grievant was fired for just cause under a collective bargaining agreement does not alone suffice to demonstrate consideration of statutory unfair labor practice issues. *See N. L. R. B. v. General Warehouse Corp.*, 643 F.2d 965 (3rd Cir. 1981); *St. Luke's Memorial Hospital, Inc. v. N. L. R. B.*, 623 F.2d 1173 (7th Cir. 1980); *Ad Art, Inc. v. N. L. R. B.*, 645 F.2d 669 (9th Cir. 1980); *Stephenson v. N. L. R. B.*, 550 F.2d 535 (9th Cir. 1977).

This court, of course, recognizes that the resolution of contractual "just cause" issues is not alone sufficient to resolve statutory unfair labor practice charges. However, in this case, the unfair labor practice issue is identical to the contractual issue because the collective bargaining agreement, like the National Labor Relations Act, provided that Walker could not be discharged for union activities. Resolution of one is necessarily a resolution of the other. The arbitration panel convened to decide whether Walker had been dismissed for "just cause" under the collective bargaining agreement. Based on the evidence presented to the arbitration panel, inherent in its decision was a resolution of the question of whether Walker was fired for an illegal or illicit cause, such as protected union activities. The panel concluded that Walker was fired for just cause thereby concluding, necessarily, that Walker was not fired for engaging in protected union activities. Petitioner's subsequent conclusion that Walker was fired because of protected union activities is nothing other than an improper reversal of the panel's prior factual determination.

To allow such a reversal runs counter to well established federal labor policy which strongly favors peaceful resolution of disputes through private arbitration. *See United Steelworkers of America v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960). If Petitioner is correct in its asserted approach to this problem, litigants in Walker's position would be motivated not to submit unfair labor practice charges to arbitration as provided in their collective bargaining agreements. Instead, during an arbitration proceeding, an employee would not assert a possible unfair labor practice charge but hold it in reserve for "appeal" to the National Labor Relations Board in case of an adverse ruling. Arbitration would become nothing more than a costly extra step in the

march to federal court rather than the cost efficient and rapid resolution of disputes it is designed to be. As a consequence, it is certain that arbitration machinery would be included in fewer collective bargaining agreements inevitably expanding unnecessarily the caseloads of the federal courts and the National Labor Relations Board.

Absent extraordinary circumstances not present in this case, deferral to the arbitration panel's decision is required.

ENFORCEMENT DENIED.